UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

EMILY A. FAULKNER,

    Petitioner,

        v.                                                        Civil No. 21-cv-490-JPG

UNITED STATES OF AMERICA,                                Criminal No 19-cr-40030-JPG

    Respondent.

## MEMORANDUM AND ORDER

This matter comes before the Court on petitioner Emily A. Faulkner's motion to vacate, set aside or correct her sentence pursuant to 28 U.S.C. § 2255 (Doc. 1).   In December 2019, the petitioner pled guilty to one count of conspiracy to distribute methamphetamine in violation of 21 U.S.C. §§ 841(a) & (b)(1)(C), 846.   In July 2020, the Court sentenced her to serve 180 month in prison.   She did not appeal her conviction.

## I.        § 2255 Motion

In her timely § 2255 motion, the petitioner raises the following claims of constitutionally ineffective assistance of counsel Bobby E. Bailey in violation of her Sixth Amendment rights:

Ground 1a:    Counsel failed to show up in court for all of the hearings;

Ground 1b:    Counsel failed to explain the criminal process in terms she could understand;

Ground 2:     Counsel told her that if she made post-arrest statements she would get a one-third reduction in her sentence and then failed to demand the Government specifically perform this promise; and

Ground 3:     Counsel threatened her that if she filled this § 2255 motion, she would serve a longer sentence and not get a sentence reduction.

Pursuant to Rule 4(b) of the Rules Governing Section 2255 Proceedings for the United States District Courts, the Court has determined that it is plain from the motion and the record of

the prior proceedings that the petitioner is not entitled to relief.

## II.   Analysis

The Court must grant a § 2255 motion when a petitioner's "sentence was imposed in violation of the Constitution or laws of the United States."   28 U.S.C. § 2255(a).   However, "[r]elief under § 2255 is available 'only in extraordinary situations, such as an error of constitutional or jurisdictional magnitude or where a fundamental defect has occurred which results in a complete miscarriage of justice.'"   *United States v. Coleman*, 763 F.3d 706, 708 (7th Cir. 2014) (quoting *Blake v. United States,* 723 F.3d 870, 878-79 (7th Cir. 2013)).   It is proper to deny a § 2255 motion without an evidentiary hearing if "the motion and the files and records of the case conclusively demonstrate that the prisoner is entitled to no relief."   28 U.S.C. § 2255(b); *see Shipman v. United States*, 925 F.3d 938, 943 (7th Cir. 2019).

Faulkner asserts violations of her Sixth Amendment rights.   The Sixth Amendment to the Constitution provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for [her] defence."   U.S. Const. amend. VI.   This right to assistance of counsel encompasses the right to *effective* assistance of counsel.   *McMann v. Richardson*, 397 U.S. 759, 771, n. 14 (1970); *Watson v. Anglin*, 560 F.3d 687, 690 (7th Cir. 2009).   A party claiming ineffective assistance of counsel bears the burden of showing (1) that her trial counsel's performance fell below objective standards for reasonably effective representation and (2) that this deficiency prejudiced the defense.   *Strickland v. Washington*, 466 U.S. 668, 688-94 (1984); *Groves v. United States*, 755 F.3d 588, 591 (7th Cir. 2014); *United States v. Jones*, 635 F.3d 909, 915 (7th Cir. 2011); *Wyatt v. United States*, 574 F.3d 455, 457 (7th Cir. 2009).

In a case where a petitioner pled guilty as a result of alleged ineffective assistance of counsel, to satisfy the first prong of the *Strickland* test, the petitioner must show that her counsel's advice leading to the plea was outside the range of professionally competent assistance.   *Hill v. Lockhart*, 474 U.S. 52, 56-57 (1985) (citing *McMann*, 397 U.S. at 771; *Tollett v. Henderson*, 411 U.S. 258, 267 (1973)).   To satisfy the second *Strickland* prong, she must show that there is a reasonable probability that, but for her counsel's deficient performance, she would not have entered a guilty plea and instead would have gone to trial.   *Lee v. United States*, 137 S. Ct. 1958, 1965 (2017); *Hill*, 474 U.S. at 59; *United States v. Parker*, 609 F.3d 891, 894 (7th Cir. 2010); *Wyatt*, 574 F.3d at 458; *Richardson v. United States*, 379 F.3d 485, 487 (7th Cir. 2004).   Counsel's deficient performance must have been a decisive factor in the defendant's decision to enter a guilty plea.   *Wyatt*, 574 F.3d at 458; *see Julian v. Bartley*, 495 F.3d 487, 498 (7th Cir. 2007).   To make such a showing, the petitioner must present objective evidence that he would not have entered a guilty plea; his own self-serving testimony that he would have insisted on going to trial is not enough.   *Koons v. United States*, 639 F.3d 348, 351 (7th Cir. 2011); *McCleese v. United States*, 75 F.3d 1174, 1179 (7th Cir. 1996) (citing *Toro v. Fairman*, 940 F.2d 1065, 1068 (7th Cir. 1991)); *see Wyatt*, 574 F.3d at 458 (stating "a defendant's mere allegation that he would have chosen a path other than the conditional plea is insufficient by itself to establish prejudice.").   "Courts should not upset a plea solely because of *post hoc* assertions from a defendant about how he would have pleaded but for his attorney's deficiencies.   Judges should instead look to contemporaneous evidence to substantiate a defendant's expressed preferences."   *Lee*, 137 S. Ct. at 1967.

In some instances counsel's deficient performance is so stark that prejudice can be

3

presumed such as where counsel abandoned a defendant or utterly failed to represent her.   This

presumption can occur:

> in the face of a "complete denial of counsel" or denial at a "critical stage" of the
> litigation.   The presumption would also be triggered if counsel "entirely fails to
> subject the prosecution's case to meaningful adversarial testing," or if, due to the
> timing of the trial or other factors, "the likelihood that any lawyer, even a fully
> competent one, could provide effective assistance is [] small."

*Smith v. Brown*, 764 F.3d 790, 796 (7th Cir. 2014) (quoting *United States v. Cronic*, 466 U.S.

648, 659-60 (1984); internal citations omitted).   A critical stage in a criminal case is "every

stage of the criminal process between arraignment and appeal that either addresses a substantive

issue or risks loss of a procedural right."   *See Schmidt v. Foster*, 911 F.3d 469, 491-92 (7th Cir.

2018).

The Court addresses each of Faulkner's arguments in turn.

A.      Ground 1a:   Counsel's Failure to Attend Hearings

It is clear from the record that Faulkner is pointing to Bailey's failure to appear at a Final

Pretrial Conference held on June 25, 2019.   At that hearing, the Court noted that the Speedy

Trial clock was tolled due to Faulkner's pending motion for a psychiatric exam, *see* 18 U.S.C.

§ 3161(h)(1)(D), and it reset the Final Pretrial Conference to a later date.   No substantive

matters were addressed or decided at that hearing.   There is no evidence in the record that

Bailey failed to attend any other hearing in this case.

Even if Bailey's failure to attend a court hearing was deficient, Faulkner was not

prejudiced by his absence.   First, absence from a single hearing is not equivalent to the

wholesale abandonment of or "non-representation" by counsel at issue in *United States v.*

*Cronic*, 466 U.S. 648 (1984), where prejudice can be presumed.   The Court hearing in question

was not a critical stage of Faulkner's criminal proceedings for which the presence of counsel was required.   No substantive issue was addressed, and no procedural right was at risk.   *See Schmidt v. Foster*, 911 F.3d 469, 491-92 (7th Cir. 2018).   Additionally, in the broader case, Bailey did not fail to subject the Government's case to adversarial testing; he simply failed to show up for a single hearing at which essentially nothing important happened.   Finally, there is no suggestion of circumstances in which no lawyer could provide competent counsel.

As for prejudice under the *Strickland* standard, had Bailey attended the June 25, 2019, Final Pretrial Conference, his presence would not have had a reasonable chance of changing the outcome.   Even if he had been there, the Court would have noted the pending motion and rescheduled the hearing, which is exactly what happened in his absence.   Thus, his failure to attend that one hearing does not warrant § 2255 relief.

B.       Ground 1b:   Explanation of the Criminal Process

Faulkner claims Bailey failed to explain the criminal process to her in terms she could understand in light of her "mental and educational deficiency."   This assertion is belied by her sworn statements at her Rule 11 plea colloquy and in her plea agreement as well as her articulation of key aspects of the process in her § 2255 motion.   In addition, Faulkner fails to explain her alleged comprehension deficiencies or to specify the issues about which she was confused.   She has further failed to point to objective facts to show a reasonable probability that she would not have pled guilty had Bailey explained something differently.

The purpose of the plea colloquy is to ensure that a defendant is not mistaken about the consequences of pleading guilty, that she is doing so knowingly, voluntarily, and competently, and that there is indeed a factual basis for the plea.   *See United States v. Rea-Beltran*, 457 F.3d

5

695, 700-01 (7th Cir. 2006).   "[T]he representations of the defendant. . . at [a plea hearing], as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings.   Solemn declarations in open court carry a strong presumption of verity."   *Blackledge v. Allison*, 431 U.S. 63, 73-74 (1977); *see Bridgeman v. United States*, 229 F.3d 589, 592 (7th Cir. 2000).

> When a district court conducts a Rule 11 colloquy, it is not putting on a show for the defendant, the public, or anybody else.   The purpose of a Rule 11 colloquy is to expose coercion or mistake, and the district judge must be able to rely on the defendant's sworn testimony at that hearing.   Because the court takes a criminal defendant's rights at a change-of-plea hearing very seriously, it is reasonable to expect, and demand, that the criminal defendant do so as well.   For that reason, a defendant is normally bound by the representations [s]he makes to a court during the colloquy.   Justice would be ill-served, and the utility of the Rule 11 colloquy would be undermined, by allowing [the petitioner] to renege on [her] representation under oath to the district court. . . .

*Hutchings v. United States*, 618 F.3d 693, 699 (7th Cir. 2010) (internal quotations and citations omitted).   The petitioner bears a heavy burden of overcoming the presumption that her sworn plea colloquy statements were true.   *See United States v. Hardimon*, 700 F.3d 940, 944 (7th Cir. 2012).

In Faulkner's plea agreement, she acknowledged that she had read the agreement, discussed it with her counsel and understood it, and that she had discussed the Government's case and her possible defenses with her counsel.   She further stated that she was fully satisfied with her counsel's representation.   She acknowledged that she was guilty of the charged offense because she had actually committed conduct that violated each element of the offense, which were listed in the plea agreement.   In exchange for the Government's concessions in the plea agreement, she also stated that, with certain inapplicable exceptions, she waived her right to appeal or collaterally her conviction and sentence.

6

At the plea hearing, Faulkner testified under oath after the Court warned her that any false or untrue statement could later be used against her in a prosecution for perjury or making a false statement.   Faulkner reported that she was 20 years old and had a tenth-grade education and could read and understand English.   She reported that she was on certain psychological medications but that they did not affect her ability to understand what was occurring at the hearing.   Faulkner told the Court she was fully satisfied with Bailey's representation and advice, and that she understood the charge against her, its possible penalties, her rights as a defendant, and that she did not have to plead guilty.   She further told the Court three times that no threats or promises had been made to her to induce her to plead guilty and twice that she was pleading guilty as her own free and voluntary act.   She further confirmed that the negotiated promises to her in the plea agreement were the reason she intended to plead guilty.

In a sealed cooperation addendum to the plea agreement, Faulkner agreed to cooperate fully with the Government, including by providing complete and truthful information about criminal activity.   In return, the Government agreed that,

> based upon substantial assistance rendered through the complete and total cooperation of Defendant, the United States may, in the sole discretion of the United States Attorney, file either a motion under § 5Kl.1 of the Sentencing Guidelines or a motion under Rule 35 of the Federal Rules of Criminal Procedure advising the Court of a recommended reduction in sentence.

Cooperation Addendum 2-3 (Doc. 36).   Faulkner further agreed that the Government would not be bound by its promises if she breached the plea agreement.

Faulkner confirmed she had discussed the sentencing guidelines with Bailey, and when she expressed hesitancy when the Court asked whether they had talked about the sentencing guidelines table, the Court took a break so they could review it.   The Government set forth the

7

factual basis for the guilty plea, including that Faulkner conspired to distribute

methamphetamine and that her relevant conduct exceeded 4.5 kilograms of methamphetamine

ice.   Faulkner agreed that this was correct.   Faulkner then entered a guilty plea.   The Court

concluded that there was a factual basis for Faulkner's plea, that she had knowingly, voluntarily

and competently pled guilty, and that she was guilty of the charge.   The Court eventually

sentenced Faulkner to 180 months in prison, below the applicable sentencing guideline range of

210 to 240 months.

Faulkner has not offered any legitimate reason why, after confirming in the plea

agreement and the plea hearing that she understood the proceedings and was happy with her

counsel's advice, the presumption that she was telling the truth then should be rejected now.

Additionally, she does not explain exactly what she misunderstood or point to objective facts

showing why a full understanding of that aspect of her case would have had a reasonable chance

of causing her not to plead guilty and to go to trial.

Indeed, the objective facts suggest Faulkner had a good reason for pleading guilty.   The

Presentence Investigation Report indicates there was plenty of evidence of her guilt.   *See* PSR

¶¶ 10-27.   For pleading guilty, she received a 3-level reduction in her offense level, which

would have lowered her anticipated sentencing range by several years.   Additionally, the

Government agreed in a modification to the plea agreement to recommend a 180-month

sentence, in line with the guideline sentencing range anticipated at the plea hearing but

substantially lower than the range found in the PSR.   Faulkner was also on the path to receive a

Rule 35(b) sentence reduction if her cooperation continued.   It would not be reasonable to

believe that, in light of substantial evidence against her, she would have foregone the great

8

benefits of the offense level reduction and possible Rule 35 motion for a sentence reduction she obtained by pleading guilty.

In sum, the record of the case shows that Faulkner understood the consequences of pleading guilty such that, as the Court found at the plea colloquy, she entered a knowing, voluntary, and competent guilty plea.   Faulkner is not entitled to § 2255 relief on this ground.

C.        Ground 2:   Promised Sentence Reduction

Faulkner claims Bailey was constitutionally ineffective by promising her that if she made a "post-arrest statement"—which the Court believes to be referring to a proffer interview with law enforcement officers—she would get her sentence cut by a third, and then failing to demand that the Government ask for this reduction.

As a preliminary matter, Faulkner testified under oath numerous times that no threats or promises had been made to her other than those contained in the plea agreement documents, so the Court confines its examination to those documents.   As noted above, the plea agreement reflects that Faulkner was giving up her right to challenge her sentence in the current circumstances, and the cooperation addendum reflects that Faulkner would "cooperate fully with the United States."   The Government promised to exercise its discretion in good faith to ask the Court for a sentence reduction under U.S.S.G. § 5K1.1 or Rule 35(b) if her cooperation was "total and complete."

The Court assumes that Faulkner provided complete and truthful information to the Government in compliance with her plea agreement.   Nothing in her motion indicates otherwise. However, filing a § 2255 motion to seek a lower sentence, a right she gave up with her guilty plea, is inconsistent with "total and complete" cooperation.   Indeed, the Government has

9

historically used its discretion to view any appeal of or collateral attack on a sentence—after a

waiver of those rights—as a lack of "total and complete" cooperation because such an action

challenges the result of the criminal proceeding.   Bailey so advised Faulkner when she inquired

about filing a notice of appeal months after her sentencing.

    With respect to Bailey's failure to challenge the Government's lack a motion at

sentencing for a reduction under U.S.S.G. § 5K1.1, he was not deficient in that respect.   The

Government promised to file either a § 5K1.1 motion at sentencing or a Rule 35(b).   At the time

of sentencing, as it almost always does in this district, the Government elected not to file a

§ 5K1.1 motion in favor of filing a Rule 35(b) motion later to better ensure continuing

cooperation.   Bailey had no grounds to object that the Government elected one of the

permissible options, so his failure to demand a § 5K1.1 motion at that time was not deficient.

Nor was it prejudicial to Faulkner.   Had Bailey objected, the Court would not have forced the

Government to chose a § 5K1.1 motion over a later Rule 35(b) motion.   Unfortunately for

Faulkner, the Government had one year to file a Rule 35(b) motion based on her cooperation

within the year after her sentencing, and by that time she had filed this § 2255 motion

inconsistent with her promise to give "total and complete" cooperation.   The Government never

promised to seek a reduction where Faulkner's cooperation was not "total and complete."

    As for Faulkner's suggestion that the Court grant her a sentence reduction at this time,

Rule 35(b) allows the Court to reduce a defendant's sentence *upon a motion from the*

*Government*.   It does not, however, allow the Court to reduce a defendant's sentence based on

her own motion.   In this case, the Government has not filed a motion under Rule 35(b), and the

Court cannot compel it to file such a motion.[1]

For these reasons, Faulkner is not entitled to § 2255 relief on Ground 2.

D.     Ground 3:   Threats Regarding Sentence Reduction

Faulkner claims Bailey was constitutionally ineffective by threatening her with a longer sentence and no reduction if she filed this § 2255 motion.   This is most certainly not constitutionally deficient performance.   Instead, it reflects competent advice regarding the matters discussed in the previous section:   if Faulkner filed this § 2255, the Government would construe that act as a failure to give "total and complete" cooperation and would exercise its discretion to not seek a reduction in her sentence.   This was not a threat from counsel but an accurate description of the legal consequences, based on counsel's knowledge of the Government's practices in this district, that would follow if she did file a § 2255 motion after giving up her right to do so.   Bailey's conduct in this regard does not justify § 2255 relief.[2]

III.   Conclusion

For the foregoing reasons, pursuant to Rule 4(b) of the Rules Governing Section 2255 Proceedings, the Court finds that it is plain from the motion and the record of the prior proceedings that the petitioner is not entitled to relief under § 2255.   Thus, there is no need for

---

[1] Faulkner makes no allegation that the Government failed to file a Rule 35(b) motion for any improper reason.   *See Wade v. United States*, 504 U.S. 181, 185-86 (1992) (prosecutor may not decline to file seek a sentence reduction based on unconstitutional motive).

[2] The Court is familiar with the Government's prior practice when this situation has arisen in other cases.   When a petitioner files a § 2255 motion after promising not to do so and places a potential Rule 35(b) sentence reduction motion at risk, the Government usually contacts the petitioner to inform them of that risk and indicates that if the petitioner timely withdraws the § 2255 motion, the Government might still file a Rule 35(b) motion.   The Court approves of this practice to give a petitioner a second chance to rethink the risks of filing a § 2255 motion.   The Court assumes the Government did this with Faulkner, but its ruling in no way depends on that step.

an evidentiary hearing.   The Court **DENIES** Faulkner's § 2255 motion (Doc. 1) and **DIRECTS** the Clerk of Court to enter judgment accordingly.

Pursuant to Rule 11(a) of the Rules Governing Section 2255 Proceedings and Rule 22(b)(1) of the Federal Rules of Appellate Procedure, the Court considers whether to issue a certificate of appealability of this final order adverse to the petitioner.   A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right."   28 U.S.C. § 2253(c)(2); *see Tennard v. Dretke*, 542 U.S. 274, 282 (2004); *Ouska v. Cahill-Masching*, 246 F.3d 1036, 1045 (7th Cir. 2001).   To make such a showing, the petitioner must "demonstrate that reasonable jurists could debate whether [the] challenge in [the] habeas petition should have been resolved in a different manner or that the issue presented was adequate to deserve encouragement to proceed further."   *Ouska*, 246 F.3d at 1046; *accord Buck v. Davis*, 137 S. Ct. 759, 773 (2017); *Miller-El v. Cockrell*, 537 U. S. 322, 327 (2003).   The Court finds that Faulkner has not made such a showing and, accordingly, **DECLINES** to issue a certificate of appealability.

**IT IS SO ORDERED.**
**DATED:   December 8, 2021**

s/ J. Phil Gilbert
**J. PHIL GILBERT**
**DISTRICT JUDGE**

12